UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JAMES EDMUND DAVID, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:17-CV-851 JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

On November 9, 2017, Plaintiff James Edmund David filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying his application for social security disability benefits [DE 1]. The matter is briefed and ripe for decision [DE 13; DE 16]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

### I.  FACTS

Mr. David filed an application for supplemental security income alleging that as of October 1, 2013, he has been disabled due to major complications with his right foot and multiple sclerosis ("MS"). By way of history, in 2003, when Mr. David was a toddler, his right foot was tragically severed by a tractor. After undergoing multiple surgeries, doctors were able to reattach his foot. Approximately eight years later, Mr. David began suffering from chronic pain in his right ankle and foot, which then led to his need for pain medication, an orthopedic brace, physical therapy, and a series of surgeries (some of which were unfortunately botched). In 2014, Mr. David ended up having his right leg amputated below the knee. He then developed rhabdomyolysis (as a result of muscle fibers dying) and had to undergo further procedures,

including an excisional debridement of the muscle and an amputation revision. In the meantime, Mr. David complained of chronic pain, nausea, hot flashes, difficulty sleeping, fatigue, an intolerance for humidity and extreme temperatures, and an inability to sit, stand, or lay down for extended periods of time.

In January 2015, Mr. David began noticing numbness in his abdomen and decreased sensation in his hands causing him to drop things. In September 2015, Mr. David's doctor noted that Mr. David wore a prosthesis, oftentimes dropped things, and could not use his hands for repetitive fine motor skills. He opined that Mr. David was unable to work. After additional extensive testing was conducted and specialists were consulted, Mr. David was diagnosed in the Summer of 2016 as suffering from MS.

Despite this medical history, state agents opined in February and June 2014 (before the amputation was performed) that Mr. David was capable of performing a limited range of sedentary work. Accordingly, Mr. David's application for supplemental security income was denied initially and on reconsideration. Hearings were held on February 26 and August 18, 2016, before Administrative Law Judge Howard Kauffman ("the ALJ"). During those hearings, testimony was provided by Mr. David, his mother, a vocational expert ("VE"), and a reviewing medical expert ("ME").

Mr. David explained how he suffered from a myriad of symptoms, but in relevant part he testified to regularly dropping objects and suffering from severe hot flashes that sometimes caused him to lose his breath and pass out. His hot flashes often caused him to wake up drenched in sweat during the night. They took up to twenty minutes to resolve after Mr. David would go outside to cool down. Mr. David's doctor told him that the hot flashes were related to his nerve

death.[1] In fact, MRI's confirmed severe demyelization of the nerves in Mr. David's central nervous system and brain stem.

Mr. David's mother, a nurse by trade, testified that Mr. David never slept through the night and suffered from approximately twenty hot flashes during the day. She confirmed that when he woke up in the morning, he would be drenched in sweat and had to go outside to cool off. She indicated that Mr. David has a small freezer in his bedroom because he uses freezer cubes at night to cool off.

At the supplemental hearing in August 2016, both Mr. David and his mother confirmed that Mr. David had just recently been formally diagnosed with MS. He started taking Rebif injections three times a week (every other day) to slow down the progression of the disease. After being placed on Rebif, Mr. David's hot flashes appeared to be worse and were described as being "horrendous." Mr. David testified to having at least ten hot flashes every day, that lasted from one minute to one hour, and that required him to lie down. He also experienced increased problems with staying asleep because of the hot flashes and nausea.

The ME's testimony indicated that he had not reviewed Mr. David's most recent medical records confirming Mr. David's symptoms and diagnosis of MS. Nor was the ME familiar with Rebif and its side effects. Thus, the ME indicated that he could not dispute that the Rebif caused Mr. David to suffer from increased nausea, increased hot flashes, and overwhelming fatigue. The ME also acknowledged that it would be possible for Mr. David to experience days when he couldn't function due to his purported side effects.

---

[1] For instance, some people with MS can have hot flashes that are not linked to hormones and are sometimes called paroxysmal symptoms. *See* WebMD, https://www.webmd.com/menopause/qa/how-can-multiple-sclerosis-ms-cause-a-hot-flash (last visiting Feb. 21, 2019).

The VE's testimony was based strictly on the (relevant) hypothetical posed to him, which offered an assigned residual functional capacity ("RFC")[2] of sedentary work, limited by various exertional and environmental limitations (none of which pertained to additional time for breaks or being off-task). Per the VE, with this RFC in mind, Mr. David (who had no past work experience) would be able to perform work as an order clerk in the food industry, document preparer, and final assembler.

The ALJ issued a decision on October 20, 2016, denying Mr. David disability benefits and concluding that he was not disabled under the Social Security Act because he was able to perform other work in the economy. The Appeals Council then denied Mr. David's request for review which made the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Mr. David seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

---

[2] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez,* 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  DISCUSSION

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

    1. Whether the claimant is currently engaged in substantial gainful activity;

    2. Whether the claimant has a medically severe impairment;

> 3. Whether the claimant's impairment meets or equals one listed in the regulations;
>
> 4. Whether the claimant can still perform relevant past work; and
>
> 5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. David argues that the ALJ failed to adequately consider the severity of his MS-related symptoms, and therefore, he contends that the "RFC [assessment] is not supported by substantial evidence." The Court agrees with Mr. David that the RFC determination was not supported by substantial evidence, and that this error requires remand (but not an award of benefits, as requested). While Mr. David also contends that the ALJ's credibility determination was flawed, the Court need not resolve this issue because remand will necessarily require that Mr. David's credibility be reassessed as part of an adequate assessment of his RFC.

## IV. ANALYSIS

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including testimony by the claimant, as well as evidence regarding limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski*, 245 F.3d at 888. Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

In this case, the ALJ failed to acknowledge or address the potential effects of Mr. David's severe and recurrent hot flashes. Indeed, the ALJ never once mentioned in his decision that one of Mr. David's symptoms included his suffering from hot flashes. Nor did the ALJ provide any discussion regarding the frequency, intensity, and limiting effects of Mr. David's hot flashes. In particular, the ALJ wholly ignored testimony by Mr. David and his mother that Mr. David suffers from up to ten hot flashes every day (and more at night), and that, depending on their severity, he may need to go outside or rest for up to an hour. The ALJ also ignored Mr. David's testimony that a treating physician indicated that the hot flashes were related to Mr. David's documented nerve death.

In sum, the ALJ's decision does not demonstrate that the ALJ considered this evidence, nor does the ALJ's decision provide the required minimal articulation for why the ALJ may have

rejected this line of evidence[3] favoring Mr. David. *See Berger*, 516 F.3d at 545; *Rice*, 384 F.3d at 371. And even if the condition is not disabling on its own, the ALJ was still required to consider the evidence relating to Mr. David's hot flashes and decide what limitations, if any, they would have on Mr. David's ability to work. *See Terry*, 580 at 477; *Golembiewski*, 322 F.3d at 918. There is nothing in the ALJ's decision to support that any limitation imposed in the RFC was intended to accommodate Mr. David for the time that he would be off-task when the hot flashes occurred or for the time that he would need to recover. This deficiency warrants reversal of the ALJ's decision. *See* SSR 96–8p at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts"). Based on the ALJ's omitting any discussion of this evidence favoring Mr. David, it is clear that the ALJ's assessment of Mr. David's RFC is not supported by substantial evidence[4] or an adequate discussion of the evidence.[5]

Lack of adequate explanation of the record evidence also prevents the Court from discerning whether the limitations with respect to Mr. David's hot flashes should have been

---

[3] The ALJ's general discrediting of Mr. David's testimony is insufficient to specifically address the problems caused by Mr. David's hot flashes. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir.2012) (noting that an ALJ's finding a claimant to be 'not entirely credible' fails to inform the court of the specific evidence considered in determining the claimant's credibility and fails to link the ALJ's conclusions to the evidence in the record).

[4] The Court would further note that the ALJ's reliance on the ME's testimony in concluding that Mr. David could perform fulltime sedentary work does not supply the substantial evidence required to affirm the ALJ's RFC determination. This is so because even the ME acknowledged that Mr. David may suffer from the type of intense hot flashes, nausea, and fatigue to which Mr. David testified about, and that, Mr. David's symptoms could prevent him from functioning on a regular daily basis (Tr. at 74).

[5] On remand, the ALJ should also explain the extent to which he credits the evidence demonstrating that Mr. David suffers from a lack of sensation in his hands and oftentimes drops objects (Tr. 104, 144, 590, 592).

incorporated into the questions posed to the VE. *See Herron v. Shalala,* 19 F.3d 329, 333-34 (7th Cir. 1994) (indicating that an ALJ must explain his analysis of the evidence with enough detail and clarity to permit meaningful review). Because the ALJ's assessment of Mr. David's RFC is not supported by substantial evidence, the determination cannot stand.[6] 42 U.S.C. § 405(g); SSR 96–8p.

## V.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval. *See Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 631 (7th Cir. 2018).

SO ORDERED.

ENTERED:  February 25, 2019

                                    /s/ JON E. DEGUILIO
                                    Judge
                                    United States District Court

---

[6] Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Mr. David's claimed (and potentially credible) limitations. Ultimately, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Mr. David can perform, and so the conclusions reached at steps four and five cannot be affirmed. *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps four and five because a flawed RFC typically skews questions posed to the VE); SSR 96-8p.